**SO ORDERED.**

**DONE and SIGNED May 13, 2015.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Colby R. Daniels | § | Case Number: 13-30010 |
| | § | |
| Debtor | § | Chapter 12 |

## AMENDED MEMORANDUM OPINION

Before the Court are two competing proposed modified Chapter 12 plans filed pursuant to 11 U.S.C. § 1229. The first modified plan was filed by the debtor, Colby R. Daniels, on April 17, 2015 (Docket No. 198). That plan has drawn an objection from Eugene Hastings, the Chapter 12 Trustee (Docket No. 208), and an objection from Mark W. Hennessy (Docket No. 212). The other proposed modified Chapter 12 plan was filed by creditor Mark W. Hennessy on April 29, 2015

1

(Docket No. 218). Mr. Hennessy's plan has drawn objections from the Chapter 12 Trustee (Docket No. 220) and the debtor (Docket No. 229).

The Court has held three hearings on these competing proposed plan modifications. The debtor's plan was originally confirmed on June 11, 2013. In December of 2014, the debtor defaulted on his plan payments as he failed to pay a total of $149,385.11 to three creditors secured by an interest in farm land. Thereafter, on March 9, 2015, the debtor filed an amended (modified) Chapter 12 plan (Docket No. 167). In summary, this amended Chapter 12 plan proposed that the debtor would sell his farm land for a price equal to the amount of all secured claims against the land ($2,600,000.00 per the fixed value of the farm land in the confirmed Chapter 12 Plan) to pay these secured creditors in full. That plan did not disclose the buyer, and was general as to the terms of the sale. It did propose the debtor would sell the farm and provide the funding within thirty days.

On March 24, 2015, creditor Mark W. Hennessy filed a competing motion to modify the Chapter 12 plan. In summary, it also proposed the sale of the debtor's farm land to pay all of the same secured creditors in full, but at a sales price $100,000.00 higher ($2,700,000.00) than the debtor's proposed selling price. The competing plans drew various objections.

On April 6, 2014, the Court held the first hearing on the competing plans. It was the opinion of the Chapter 12 Trustee, Eugene Hastings, that the subject farm land should be sold at the highest possible price as to maximize the return to other creditors, including unsecured creditors. The Court agreed and, pursuant to 11 U.S.C. § 1206, authorized an auction to determine the highest possible return to the estate. The Court entered an order authorizing the auction and setting forth auction procedures (Docket No. 193), and a Trustee's Report on Auction was filed in compliance with the Court's order (Docket No. 195). The highest bidder was Mr. Hennessy, who

2

bid $2,800,000.00. This amount exceeded both the debtor's original proposed sales price set forth in his modified Chapter 12 plan, as well as the original sales price Mr. Hennessy had proposed in his competing modified Chapter 12 plan.

Thereafter, on April 17, 2015, both the debtor and Mr. Hennessy amended their competing modified Chapter 12 plans (Docket Nos. 197 and 198). In the debtor's new amended plan, he proposed to sell the farm land to WEK Properties, L.L.C. ("WEK") for $2,800,000.00, which was the highest bid at the court sanctioned auction. WEK was a bidder at said auction, but it was not the high bidder. In summary, Mr. Hennessy amended his plan to mirror the auction terms, which called for the sale of the farm land to Mr. Hennessy for $2,800,000.00 pursuant to his bid. Again, both amended plans drew various objections.

On April 27, 2015, the Court held its second hearing on the competing plans. Further technical plan amendments were required. As a result, Mr. Hennessy amended his modified plan (Docket No. 218). In summary, that amended plan raised the proposed price for the sale of the farm land to Mr. Hennessy to $3,000,000.00. This is a sum that greatly exceeds the original sales price proposed by the debtor in his first attempt to modify his plan. This sum provides an additional $400,000.00 to be distributed to creditors other than those secured by the farm land.

On May 7, 2015, the Court held its final hearing on the competing plans. The Court heard testimony from the Mr. Hennessy, the debtor, and Robert W. McGehee, an agent of WEK.

Mr. Hennessy testified he has known the debtor for about twenty years and has made repeated loans to him. He holds a secured and an unsecured claim against the debtor and has invested one million dollars in a facility within the farm land that is proposed to be sold. Mr. Hennessy owns a five acre parcel of land on which this facility stands. Mr. Hennessy described this land as an "inholding property." It is this subject property which partially motivates his desire

to purchase the entire farm land. The parcel is completely surrounded by the debtor's farm land. The parcel also includes an easement across the debtor's farm land for access. The facility on this parcel is used to store and cure sweet potatoes. Mr. Hennessey testified this facility was conceived and constructed as part of his relationship with the debtor, and that for a time the debtor farmed sweet potatoes. Mr. Hennessy believes this parcel's value would be greatly enhanced if he also owned the property surrounding it. Otherwise, the parcel is effectively an island surrounded by farm land owned by the debtor. Accordingly, Mr. Hennessy is willing to pay $3,000,000.00 for the entire farm land. This sum provides a $400,000.00 increase in the dividend to unsecured creditors. The Court finds Mr. Hennessy a credible and competent witness.

The debtor testified that, beginning December 15, 2014, he defaulted on his plan payments to secured creditors. In summary, he defaulted on the following payments due to secured creditors on December 14, 2014: $11,265.41 due to USDA/FSA, $44,614.11 due to 1st National Bank, and $ 93,505.59 due to Mark W. Hennessy. The total of all defaulted payments was $149,385.11. He testified he planted soybeans in 2014 and his expectations for both crop yield and sales price were not met. This led to the default. While the debtor was a credible witness, the Court has concerns regarding his testimony. He was unable to answer simple questions a farmer should be able to answer. He was unaware of his gross farming revenue and total farming expenses for 2014. His initial estimates of tillable acreage, as well as the acreage he planned to till in 2015, were nonsensical. Only after the Court interjected into questioning did the debtor finally realize his testimony needed to be corrected. Still further the financial information contained in the debtor's summary of farm operations (Debtor Exhibit 2) is clearly inaccurate. It contains no interest expense for his proposed crop loan, which would be required for him to farm in 2015. Also, based on the lease provided by the debtor (Debtor Exhibit 1) and the debtor's testimony regarding lease

4

rates of the other parcels he intended to lease and farm, the proposed lease payments are understated. Based on the testimony of the debtor, the minimum lease payments under the "flex" lease would be $83,703.00 (Debtor Exhibit 1), plus $20,000.00 for an additional 160 acre tract, plus $3,000.00 for an additional 25 to 28 acre tract. The minimum lease payments total $106,703.00. The debtor has disclosed lease payments of only $93,375.00 in his summary of farm operations. The Court stresses that the evidence only supports a minimum, and not a maximum or actual, lease payment amount for the debtor's proposed farming in 2015. The Court does not find the debtor had any intent to deceive. However, he seems generally unaware of basic accounting, and the Court must discount his financial testimony.

The debtor testified that if the farm land were sold to WEK for $2,800,000.00 as he proposed in his modified plan, he could bridge the $200,000.00 difference between Mr. Hennessy's and WEK's sales prices by leasing back and farming the sold property under a "flex" lease with WEK. He would devote the farming profit to unsecured creditors in year three of the plan. The debtor introduced a proposed farm lease (Debtor Exhibit 1), the "flex" lease, as well as a summary of farm operations (Debtor Exhibit 2). As discussed above, the summary of farm operations contains errors and its evidentiary value is diminished; however, it incorrectly suggests total net income available for unsecured creditors of $196,213.00 for 2015.

The last witness was Robert McGehee, an agent of WEK. He briefly testified he has worked as an agent for WEK for seven years and that WEK has the financial ability to close the sale proposed by the debtor within fourteen days. He also testified that yields for soybeans are determined by many factors. The Court finds Mr. McGehee a competent and credible witness.

In comparing the two competing amended Chapter 12 plans, the Court finds the three year plan proposed by the debtor to be financially deficient in comparison to the plan proposed by Mr.

5

Hennessy. Given the evidence, Mr. Hennessy's plan provides a greater return to unsecured creditors because of the purchase price of the farm land as proposed by Mr. Hennessy, as well as the evidentiary failings of the financials provided by the debtor. In fact, even if the Court were to accept the debtor's financials as accurate, the proposed return to unsecured creditors under the debtor's amended plan ($396,213.00, which is the $2.8 million sales price, minus secured claims of $2.6 million, plus one year of farming operations, and ignoring interest) is still less than the amount offered under Mr. Hennessy's plan ($400,000.00, which is the $3 million sales price, minus secured claims of $2.6 million, and ignoring interest).

Counsel for the debtor suggested this issue could be resolved by an extension of the debtor's proposed amended Chapter 12 plan from three to four years. This would increase the distribution to unsecured creditors by adding an additional year of farm profits. In theory, this could propel the debtor's plan past Mr. Hennessy's competing plan. However, this hypothetical plan is not before the Court. The Chapter 12 Trustee argued that if the Court were to compare the competing plans before the Court, Mr. Hennessy's plan should be confirmed based solely on the dividend to unsecured creditors. However, should the Court grant leave for the debtor to amend his modified Chapter 12 plan to a four year term, the dividend to unsecured creditors may be enhanced.

At the conclusion of the presentation of evidence, the Court entered an oral ruling, subject to additional findings. The Court found that while debtor's counsel has suggested the debtor can further amend the plan to a four year term, this is not presently before the Court. As for the debtor's modified plan, the Court finds he has failed to meet his burden under 11 U.S.C. § 1325. Given the errors discussed on the record regarding the summary of farming operations, the debtor has not

6

13-30010 - #247  File 05/13/15  Enter 05/13/15 14:18:54  Main Document  Pg 6 of 12

met his burden with regard to feasibility. He has also not met his burden with regard to liquidation value given the testimony of the parties regarding value of the farm property to be sold.

Still further, the Court orally sustained the objection of the Trustee (Docket No. 208) as to good faith. This is due to the debtor's apparent attempt to undermine the auction process by proposing a plan after the auction that simply proposes a sales price for the farm that matches Mr. Hennessy's high bid at the court sanctioned auction. There is the appearance of collusion and unfairness.

Further, the evidence clearly shows Mr. Hennessy's plan will provide a greater return to unsecured creditors than the debtor's plan.

Additionally, the Court orally ruled that if this were not a Chapter 12 case, this Court's findings would end the debtor's chance to modify his plan and the Court would approve Mr. Hennessy's plan. However, this is a Chapter 12 case, and the Court must attempt to adhere to Congressional intent. Chapter 12 is designed to support the family farmer. Additionally, the Court must give great deference to the Chapter 12 Trustee's recommendation, which is to allow the debtor an attempt to amend his proposed modified Chapter 12 plan. Therefore, the Court granted leave to the debtor to file an amended plan no later than 5:00 p.m. on May 8, 2015. The Court considers such an amendment to be a trial amendment permissible under Federal Rule of Civil Procedure 15(b).

Still further, the Court granted Mr. Hennessy leave to amend his plan to resolve the small technical objections of the Chapter 12 Trustee. Such amendment must be filed by 5:00 p.m. on April 8, 2015, pursuant to Federal Rule of Civil Procedure 15(b).

The Court announced it would evaluate any timely filed amended plans and would further rule after reviewing the record and evidence before it. The Court would not hear any other evidence on either competing plan.

Thereafter, the debtor (Docket No. 234) and Mr. Hennessy (Docket No. 237) amended their modified plans within the time allowed by the Court. Both parties filed motions for leave to file objections and responses. As previously suggested by the debtor, his amended plan extended the plan to a term of no less than four years, which is somewhat nebulous because it potentially extends the plan beyond four years, arguably to infinity.

Likewise, Mr. Hennessy also amended his plan. In addition to making technical amendments, he also raised the sales price of the farm land from $3.0 million to $3.2 million.

The Court notes that the process it has undertaken over multiple hearings has had a major impact on the return to unsecured creditors in this case. As originally proposed by the debtor, the sale of the farm land would have provided no benefit to unsecured creditors. Now, there is a competing modified plan that will bring an almost immediate payout of $600,000.00 to unsecured creditors, again ignoring accumulated interest on secured claims.

The debtor has attempted to buttress his position by attaching a new proposed budget to his modified plan (Docket No. 234, Attachment #1). The new budget includes several changes which attempt to correct the errors contained in the original budget. It includes interest for a crop loan, for which there is no evidence as to amount or calculation in the record. It also includes an increase in rent. The rent expense is more accurate than it was in the original budget; however, based on the testimony and other evidence, it is still may not be an accurate figure as there is no evidence in the record regarding its calculation.

8

Yet again, this raises a major concern. The debtor has consistently been delayed or delinquent during this modification process. He originally proposed a modified plan which proposed the farm land be sold at price equal to the sum of all secured liens against the property. That sales price was almost immediately exceeded by $100,000.00 by Mr. Hennessy. After multiple hearings, the price offered by the debtor for the sale has never exceeded the price offered by Mr. Hennessy. The best proposal the debtor has offered is only to match the auction sales price. Further, the financial information originally submitted by the debtor was inaccurate and needed to be corrected. The debtor has had every opportunity to propose a plan and provide financial information that would suffice to modify his Chapter 12 plan, but he has repeatedly failed to so. Simply put, the debtor has not been diligent during this process, and has proposed to sell his most valuable asset at a value below what has been offered by Mr. Hennessy on multiple occasions. In addition, the debtor has consistently provided financial information that does not survive an analysis of the evidence. Still further, the Court has concerns the debtor's attempt to undermine the court sanctioned auction process by proposing a modified plan after the auction that simply matches the auction price after the fact. This potentially subjects this Court to claims of collusion and unfairness.

Based on the initial errors and the debtor's testimony, the Court continues to believe the financial information provided by the debtor is not accurate. The Court has reviewed the monthly operating reports filed by debtor during 2014, which is the year the debtor defaulted on his plan payments. The reports are deficient. Specifically, the Court finds that during 2014, there is not a single operating report that details any crop sales. This is a serious deficiency and further supports the Court's finding that the debtor's financial statements and projections are inaccurate. More

importantly, even if the debtor's financial information is accurate, Mr. Hennessy's most recent plan still provides a greater dividend to unsecured creditors.

Additionally, Mr. Hennessy's plan has two specific advantages over the modified plan filed by the debtor. First, Mr. Hennessy's plan lacks the general risk that is attendant with farming. The debtor did not intentionally default on his Chapter 12 plan payments. Instead, he defaulted because his expectations for both soybean crop yield and sales price were not met. The debtor defaulted in his plan payments in the second year of his plan when, unlike the first year, he was required to make both interest and principal payments to secured creditors. There are many factors that lead to crop yield and a crop sales price; therefore, there is a definite risk the debtor will again not meet his projected crop yield and crop sales price. Therefore, there is no guarantee the debtor will meet his financial projections, especially given a historical analysis of the debtor's operations via his monthly operating reports. Especially over two future years, which is when the debtor proposes to make payments to unsecured creditors from farming operations.

The second advantage of Mr. Hennessy's plan is that the payment to creditors will be nearly immediate. Under his plan, closing on the sale of the farm land can be completed within weeks, and the distribution to unsecured creditors will be immediate as opposed to the two years proposed by the debtor. While interest rates are currently low, unsecured creditors would likely prefer full payment of their claims now than delayed payments over the next two years.

Lastly, as it relates to the debtor's modified Chapter 12 plan, Mr. Hennessy has rights in this case. The debtor's plan prejudices Mr. Hennessy as it forces him to accept a sale of farm land to an entity he outbid at a court sanctioned auction, and at a sales price lower than he has offered. Under the debtor's plan, he must then wait for payment on his unsecured claim, which is contingent on whether the debtor's farming operation is successful, which it has not been in the past. If the

10

13-30010 - #247  File 05/13/15  Enter 05/13/15 14:18:54  Main Document  Pg 10 of 12

debtor fails to meet his financial projections, then Mr. Hennessy will not get paid on his unsecured claim, and he will continue to hold the inholding property surrounded by land owned by an auction bidder that he outbid by $400,000.00. This result is not equitable.

The debtor has the burden of proof when seeking to modify a confirmed Chapter 12 plan. *See In re Hart*, 90 B.R. 150 (Bankr. E.D.N.C. 1988); *In re Cooper*, 94 B.R. 550 (Bankr. S.D. Ill. 1989). The Court holds the debtor has failed to meet his burden under 11 U.S.C. § 1229(b), which incorporates §§ 1222(a), 1222(b), 1223(c) and 1225(a). Specifically, 11 U.S.C. § 1225(a)(3) requires the debtor propose a plan in good faith, which this debtor has not done. Further, pursuant to 11 U.S.C. § 1225(a)(4), the debtor's plan must meet the liquidation test. The liquidation test requires the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim shall not be less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7. Given the competing modified plans, and Mr. Hennessy's proposed sales price of the farm land for $3.2 million, the debtor has failed to meet his burden under § 1225(a)(4). Accepting the debtor's last proposed financial projection (Docket No. 234, Exhibit A), which the Court still notes is suspect and is not supported by evidence, the Court finds the return to unsecured creditors under the debtor's proposed modified plan is $526,350.00. This calculation is arrived at from the sale of the farm (sales price of $2.8 million, minus $2.6 million in liens), plus $326,350.00 (which is the debtor's net projected income of $163,175.00 per year over the next two years). The Court notes that all calculations ignore accrued interest. By comparison, Mr. Hennessy's proposed modified plan allows for a return to unsecured creditors of $600,000.00, which is calculated by the sales price of $3.2 million minus $2.6 million in liens, and again ignoring accrued interest.

11

13-30010 - #247 File 05/13/15 Enter 05/13/15 14:18:54 Main Document Pg 11 of 12

Additionally, pursuant to 11 U.S.C. § 1225(a)(6), the debtor must show he will be able to make all payment under the plan, and that he will be able to comply with the plan. Based on the evidence and the Court's concerns regarding the debtor's financial projections, the Court finds the debtor has failed in this regard.

The Chapter 12 Trustee has recommended confirmation of Mr. Hennessy's modified Chapter 12 plan (Docket No. 242). Modification of a Chapter 12 plan after confirmation is permissible at any time before plan completion on request of the debtor, the trustee or the holder of an allowed unsecured claim. 11 U.S.C. § 1229(a); *see also In re Pearson*, 96 B.R. 990 (Bankr. D.S.D. 1989). The Court finds that Mr. Hennessy is an unsecured creditor (Claim No. 14); therefore, he can propose a Chapter 12 plan modification.

11 U.S.C. § 1222 (b) provides that the plan may provide for the sale of all or any part of the property of the estate. Accordingly, Mr. Hennessy's modified plan is permissible. Still further, the Court finds the procedures it has set forth comply with 11 U.S.C. § 1206. Therefore, the sale is proper as it pays all secured creditors in full and provides a substantial distribution of $600,000.00 to unsecured creditors, again ignoring accrued interest to secured creditors.

The Court further finds Mr. Hennessy's modified Chapter 12 plan complies with 11 U.S.C. § 1229(b), which incorporates §§ 1222(a), 1222(b), 1223(c) and 1225(a), and that Mr. Hennessy has met his burden to confirm his modified Chapter 12 plan.

Therefore, the Court grants creditor Mark W. Hennessy's motion to modify the Chapter 12 plan as recommended by the Chapter 12 Trustee.

The Chapter 12 Trustee, Eugene Hastings, is **ORDERED** to upload a confirmation order in conformity with this Memorandum Order. All other relief is denied.

###